IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LISA F. TYLER, individually and as personal representative of the estate of Donald P. Tyler, deceased, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-CV-584-WKW |
| | ) | [WO] |
| FORD MOTOR COMPANY and BOBBY FRANK LANE, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Ford Motor Company's Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. # 12.) The question is whether Ford's actions in Alabama are sufficient to subject Ford to the personal jurisdiction of this court. For the reasons stated below, they are not. Ford's motion to dismiss is therefore due to be granted.

### I. BACKGROUND

On November 1, 2019, decedent Donald Tyler was driving a 2001 Ford F-250 while towing a trailer. Plaintiff Lisa Tyler was a passenger in the vehicle. While driving on I-65 North in Chilton County, Alabama, Defendant Bobby Frank Lane side-swiped the rear of the F-250, causing Mr. Tyler to lose control and crash into the median cable barrier. (Doc. # 1 at 2.) Plaintiff alleges that both occupants were

properly wearing their seatbelts when the F-250 rolled over, landing on the roof of the vehicle.  The roof deformed, and the left side pillars collapsed due to the allegedly defective nature of the vehicle.  (Doc. # 1 at 2–3.)  Decedent Donald Tyler died in the crash, and Plaintiff Lisa Tyler suffered extensive injuries.  (Doc. # 1 at 3.)  Plaintiff Lisa Tyler brought suit against Ford Motor Company and Bobby Frank Lane on behalf of herself and the estate of decedent Donald Tyler.

Defendant Ford is a Delaware corporation with its principal place of business in Michigan.  (Doc. # 1 at 2.)  Ford has extensive contacts with the State of Alabama. Through national and Alabama-specific advertisements, it regularly reaches out and encourages Alabama citizens to become Ford owners.  Ford partners with hometown staples such as The University of Alabama and Auburn University to target and service the Alabama market.  It regularly ships vehicles and replacement parts to Alabama.  (Doc. # 20 at 10–13; Doc. # 21-2; Doc. # 21-3; Doc. # 21-5.)

Plaintiff and decedent, however, were not Alabama residents.  Plaintiff is— and decedent was—a resident of the state of Florida.  (Doc. # 1 at 1; Doc. # 20 at 2.) The vehicle at issue was designed by Ford in Michigan, manufactured in Mexico, and sold to an independent dealership in Tennessee.  Plaintiff and decedent purchased their Ford vehicle in Panama City, Florida.  The vehicle has never been registered in any state other than Tennessee and Florida.  (Doc. # 21-4.)  It appears

2

that the F-250 was only present in the state of Alabama because Plaintiff and decedent chose to drive into Alabama that day.

## II. JURISDICTION AND VENUE

Subject matter jurisdiction is proper under 28 U.S.C. § 1332, as Plaintiff is a citizen of the state of Florida; the decedent was a citizen of the state of Florida; Defendant Ford is a Delaware corporation with its principal place of business in Michigan; Defendant Lane is a citizen of the state of Alabama; and the amount in controversy exceeds seventy-five thousand dollars. The parties do not contest venue. Personal jurisdiction is contested as explained herein.

## III. STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(2), "the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). However, the court "must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Id.* Additionally, "where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff." *Id.*

The court may exercise personal jurisdiction over Ford only to the extent authorized by rule or statute, and only so long as that rule or statute is consistent with

established due process principles. The constitutional question involves a two-part inquiry. First, the defendant must have sufficient "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Second, the exercise of jurisdiction must comport with "traditional notions of fair play and substantial justice." *Id.* (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This second part of the inquiry looks at such factors as "the burden on the defendant"; "the forum State's interest in adjudicating the dispute"; "the plaintiff's interest in obtaining convenient and effective relief"; "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

The constitutional limits on personal jurisdiction "protect[] the defendant against the burdens of litigating in a distant or inconvenient forum" and "act[] to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Id.*

There are two ways to satisfy this personal jurisdiction test—both requiring different "minimum contacts" and both being at issue in this case. The first is called "general" personal jurisdiction, and the second is called "specific" personal jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15 (1985).

General personal jurisdiction, also called "all-purpose" jurisdiction, requires contacts that "are so 'continuous and systematic' as to render [the Defendant] essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (quoting *Int'l Shoe*, 326 U.S. at 317). If a defendant is subject to the general jurisdiction of a state, then personal jurisdiction will be satisfied for any suit brought against it in that state, no matter where any suit-related events occurred. Absent exceptional circumstances, corporations will be "at home" only in their state of incorporation and the state of their principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984); *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952). The state of incorporation and the principal place of business are "unique" and "easily ascertainable," and opening those fora "afford[s] plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Daimler*, 571 U.S. at 137. A corporation is not subject to general jurisdiction anywhere where it "engages in a substantial, continuous, and systematic course of business," *id.* at 138, as conducting business in a state is one thing but making the state the "home" of the corporation is quite another. *See id.* at 139 n.19.

Specific personal jurisdiction is different. Although it extends beyond the home jurisdictions of the defendant, it does not work for all claims brought against the defendant. First, the contacts with the forum state must rise to the level of

"purposeful availment":  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The contacts, to be purposeful, must be intentional and not "random, isolated, or fortuitous."  *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984).  Second, if the defendant has deliberately made contact with the forum state, "'the suit' must 'arise out of or relate to the defendant's contacts with the forum.'"  *Bristol-Myers Squibb Co. v. Superior Ct. of Calif., San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017) (alterations adopted) (emphasis omitted) (quoting *Daimler*, 571 U.S. at 118).

> In other words, there must be "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."

*Id.* (alteration adopted) (citation omitted) (quoting *Goodyear*, 564 U.S. at 919).

The Supreme Court had occasion to consider its specific jurisdiction test earlier this year in *Ford Motor Company v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021).  Reaffirming longstanding doctrine, the Court said: "When (but only when) a company 'exercises the privilege of conducting activities within a state'—thus 'enjoying the benefits and protection of its laws'—the State may hold

6

the company to account for *related* misconduct." *Id.* at 1025 (alterations adopted) (emphasis added) (quoting *Int'l Shoe*, 326 U.S. at 319). Ford argued before the Supreme Court, as it previously did here,[1] that specific jurisdiction could only attach where there is a strict causal relationship between Ford's actions and the injury. *Id.* at 1026. Essentially, Ford argued that specific jurisdiction was limited to the state where Ford sold the complained-of vehicle, or the states where Ford designed and manufactured the vehicle. *Id.*

The Supreme Court rejected this interpretation. Relying heavily on *Daimler*'s "arise out of or relate to" test, the court said that Ford's activities in the forum state had a significant relationship with the accident, even though they did not necessarily have a causal one. The Court held that Ford's extensive marketing and servicing operations in the forum states generated a sufficient relationship to the suit:

> [T]he owners of these cars might never have bought them, and so these suits might never have arisen, except for Ford's contacts with their home States. Those contacts might turn any resident of [the forum state] into a Ford owner—even when he buys his car from out of state. He may make that purchase because he saw ads for the car in local media. And he may take into account a raft of Ford's in-state activities designed to make driving a Ford convenient there: that Ford dealers stand ready to service the car; that other auto shops have ample supplies of Ford parts; and that Ford fosters an active resale market for its old models.

---

[1] Before the Supreme Court's decision in *Ford Motor*, the Eleventh Circuit required that the defendant's contacts with the forum state be a but-for cause of the injury in order to establish specific personal jurisdiction. *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1315 (11th Cir. 2018).

*Id.* at 1029.   Although the Court declined to find that a causal link had been established, it held that the possibility of causation underscored the depth of the relationship between Ford's contacts with the forum state and the ownership of the vehicle.   In distinguishing *Bristol-Myers*, the Court noted:   "The plaintiffs are residents of the forum States. They used the allegedly defective products in the forum States. And they suffered injuries when those products malfunctioned in the forum States."   *Id.*   The Court's conclusion was that personal jurisdiction exists where "resident-plaintiffs allege that they suffered in-state injury because of defective products that Ford extensively promoted, sold, and serviced in [the forum state]."   *Id.* at 1032.

## IV.  DISCUSSION

### A.  Specific Personal Jurisdiction

The first question is whether a statute or rule authorizes the exercise of specific jurisdiction.   Statutes or rules that authorize the exercise of personal jurisdiction outside of the territorial limits of a court are called long-arm statutes. Under Rule 4(k) of the Federal Rules of Civil Procedure, this court is authorized to exercise the same personal jurisdiction that can be exercised by the courts of the State of Alabama.   *See* Fed. R. Civ. P. 4(k)(1)(A).   Alabama law, in turn, extends service on foreign persons or entities to the limits of the Constitution. *See* Ala. R.

Civ. P. 4.2(b).  The statutory question thus merges with the constitutional question.  *See Morris*, 843 F.2d at 492 n.3.

The constitutional question is not so straightforward.  Plaintiff says that this motion can be disposed of as the case is directly analogous to the Supreme Court's recent decision against Ford.  Ford argues that the Supreme Court's repeated mention of the residency of the plaintiffs must imply that a plaintiff's residency is relevant to determining the relatedness of the defendant's contacts to the suit.

There is no question that Ford has purposefully availed itself of the privilege of conducting business in Alabama.  Ford purposefully reaches out to Alabama in a number of different ways—supplying vehicles to dealerships in Alabama, advertising in Alabama, maintaining a resale market in Alabama, shipping replacement parts to Alabama, and so on.  Ford admits that its contacts with Alabama are at least as extensive as its contacts with the forum states in *Ford Motor*.  (Doc. # 26 at 5.)  The only question is whether the crash in this case arises out of or relates to Ford's contacts with Alabama.

It appears that this case is within the prophesied ambiguity of the Supreme Court's new ruling.  *See Ford Motor*, 141 S. Ct. at 1034 (Alito, J., concurring) ("But without any indication what those limits might be, I doubt that the lower courts will find that observation [that the phrase 'relate to' 'incorporates real limits'] terribly helpful."); *see also id.* at 1035 (Gorsuch, J., concurring) ("The majority promises

9

that its new test 'does not mean anything goes,' but that hardly tells us what does."). On the one hand, "arise out of or relate to" is broad wording. Ford's contacts with Alabama are "related to" the claim at hand in the sense that it advertises, sells, and repairs the same kind of vehicle—the Ford F-250—in Alabama. But that is where the comparison ends. Once the vehicle in this suit separated from its Alabama-bound counterparts, it lost all relationship with Ford's contacts to Alabama. There is no indication that Ford's contacts with Alabama have anything to do with the Tylers' ownership of a Ford or Lane's conduct that led to the crash. Other than marketing and selling the same vehicle to Alabama customers, Ford's activities in Alabama have nothing to do with this case. Despite having no literal relationship with the events of this case, do Ford's activities have a strong enough analogical relationship to meet *Daimler*'s requirements? They do not.

Lower court rulings following *Ford Motor* have done little to shed light on this problem. It is clear that mere purposeful availment remains insufficient to impart personal jurisdiction if the contacts are not related to the controversy at suit. *See Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021); *Johnson v. UBS AG*, 860 F. App'x 531, 533 (9th Cir. 2021). Where the events giving rise to the claim occurred outside the forum state and the plaintiffs also live outside the forum state, it is clear that mere analogy to in-state contacts is not enough. *See Canaday v. Anthem Cos.*, 9 F.4th 392, 400 (6th Cir. 2021); *Vallone v. CJS Sols. Grp., LLC*, 9

F.4th 861, 863 (8th Cir. 2021). One circuit has said, in *dicta*, that "sales of similar vehicles and the presence of dealerships in a forum can support personal jurisdiction," but that case involved a resident-plaintiff and therefore is not conclusive on the issue in this case. *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1156–57 (Fed. Cir. 2021). No circuit cases are directly on point. None discusses the situation where an individual who resides outside the forum suffers in-forum injuries from a product that he himself brought into the forum, but which happens to also be marketed by the defendant in the forum.

It is well-settled that the actions of a plaintiff or third party cannot alone constitute a basis for personal jurisdiction over a defendant. *See Walden v. Fiore*, 571 U.S. 277, 286 (2014). The minimum contacts analysis must focus on the *defendant's* actions in the forum state. *Id.* Thus, the fact that the Tylers drove their F-250 into Alabama cannot establish personal jurisdiction over Ford. The fact that Defendant Lane side-swiped the Tylers in Alabama also cannot establish personal jurisdiction over Ford. Indeed, none of the events with the particular F-250 at issue can be fairly characterized as contacts that *Ford* made with Alabama. The only contacts that Ford made with Alabama—and thus the only contacts upon which personal jurisdiction can be based—are the other marketing, servicing, repair, and sales contacts that Ford regularly performs in Alabama.

Ignoring the fact that the crash occurred in Alabama brings significant clarity to the situation.  Indeed, this case becomes immediately comparable to *Bristol-Myers*.  In that case, the defendant had distributed the complained-of product all across the country, including in California, the forum state.  137 S. Ct. at 1783.  However, the plaintiffs did not acquire their products in California and were not California residents.  *Id.*  For the nonresident plaintiffs, the issue of personal jurisdiction was clear: the defendant's mere fostering of a market for the product in California was not enough to confer personal jurisdiction where the specific product at issue was not sold in California and where the plaintiffs did not buy the product in or reside in California.  *Id.*

The Supreme Court in *Ford Motor* said that the "arise out of or relate to" test still has "real limits."  *Ford Motor*, 141 S. Ct. at 1026.  The Court cringed at the idea of plaintiffs being able to sue in all fifty states for a local controversy.  *Id.* at 1027 n.3.  This kind of unlimited jurisdiction has long been the bogeyman of the Supreme Court's personal jurisdiction jurisprudence.  *See Hanson*, 357 U.S. at 251 ("But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts.").  Yet, if Ford's contacts with Alabama—related to this case solely because similar products are being marketed, sold, and repaired—are sufficient to support personal jurisdiction, then there is essentially no limit on personal jurisdiction against Ford.  Ford maintains such a market in every

12

state, as do nearly all motor vehicle manufacturers.  Personal jurisdiction would become irrelevant in suits against nationwide companies.

Additionally, the Supreme Court in *Ford Motor* went to great lengths to explain how Ford's contacts with the forum states in those cases were relevant to the *resident-plaintiffs'* claims.  141 S. Ct. at 1028–29.  The Court discussed at length the possibility of causation for resident-plaintiffs.  *Id.*  Further, the Court specifically mentioned the residency of the plaintiffs at least twenty times in the opinion.  *Id.*  If residency were irrelevant, much of the Court's analysis would be irrelevant.  The Court's holding—that "*resident-plaintiffs* [who] allege that they suffered in-state injury because of defective products that Ford extensively promoted, sold, and serviced in Montana and Minnesota" can invoke the jurisdiction of their home states, *id.* at 32 (emphasis added)—would be too narrow, as it would be unnecessary to qualify the holding by mentioning the residency of the plaintiff.

It has been said that "everything is related to everything else."  *See* Waldo Tobler, *A Computer Movie Simulating Urban Growth in the Detroit Region*, 46 Economic Geography 234 (1970) (laying out Tobler's First Law of Geography).  But the Supreme Court was adamant that its "related to" test is not unlimited.  In order for there to be any "real limits" on Ford's personal jurisdiction, then Ford's contacts with Alabama must have some relation to the suit beyond the mere analogical relationship in this case.  Simply serving the forum state's market—even serving the

relevant product to the market—is not alone enough of a relationship to meet the minimum contacts requirement. *Accord Mason v. Sony Pictures Ent., Inc.*, 2021 WL 1663492, at *5 (N.D. Ga. Apr. 28, 2021) (holding that no personal jurisdiction exists where the only suit-related conduct in the forum was the national airing of the allegedly trademark-infringing television show).

Ford's contacts with Alabama have nothing to do with the complained-of vehicle, and Plaintiff has not drawn any connection between Ford's contacts and the events-at-suit.  Plaintiff does not explain any relationship between Ford's Alabama activities and her vehicle crash.  Because of this, Ford's contacts with the state of Alabama are insufficient to support the exercise of specific personal jurisdiction in this case.

## B.  General Personal Jurisdiction

The prevailing Supreme Court jurisprudence, outlined above, says that general personal jurisdiction applies wherever a defendant is "at home."  However, Plaintiff does not argue that Ford is at home in Alabama.  Instead, Plaintiff argues that general jurisdiction is appropriate because Ford has consented to the general jurisdiction of the state of Alabama.  Specifically, Plaintiff argues that Ford has consented to jurisdiction in Alabama by virtue of Ford's registering to do business in the state.

Plaintiff's argument is fundamentally inconsistent with the modern view of general jurisdiction. Even the Supreme Court in its recent decision against Ford mentioned that "general jurisdiction over Ford . . . attaches in Delaware and Michigan," Ford's state of incorporation and principal place of business respectively. *Ford Motor*, 141 S. Ct. at 1024. Modern jurisprudence says that a company is "at home" only in those places it maintains "continuous and systematic" contacts—where some central part of the company is located. *See Daimler*, 571 U.S. at 137. In almost every case, this will be limited to the company's state of incorporation and principal place of business. *Id.* at 139.

Registering to do business in a state obviously does not create a relationship with that state that is on the same level as reincorporating in that state or moving the corporate headquarters to that state. In general, Alabama law requires a corporation to register before doing business in the state—no matter how minor or sporadic that business is. *See* Ala. Code § 10A-1-7.01(c). If Plaintiff's argument were correct, then every nationwide and global corporation that is registered in Alabama, even if it has never in fact conducted business in the state, could be sued in Alabama for any and all claims against it, even claims based on events in another state or country.

Nevertheless, if case law were written in stone, Plaintiff would have an airtight argument. In *Ex parte Nissei Sangyo America, Ltd.*, 577 So. 2d 912, 914 (Ala. 1991), the Alabama Supreme Court held that any corporation registered to do business in

15

Alabama has consented to the jurisdiction of the Alabama state courts—thereby seemingly resolving the state law issue.  And in *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 95 (1917), the United States Supreme Court held that a state can require the appointment of a registered agent for companies doing business in the state and can treat such appointment as consent to the jurisdiction of the state courts—thereby seemingly resolving the constitutional issue.

But cases are not written in stone, and these two cases are no longer good law.

### 1.   Alabama law does not equate registration with consent to jurisdiction.

Like in any personal jurisdiction analysis, the first question is whether a statute or rule authorizes the exercise of jurisdiction.  As mentioned above, this court is authorized to exercise the same jurisdiction as the courts of the state of Alabama. *See* Fed. R. Civ. P. 4(k).  The question therefore is one of Alabama law.  When a federal court must apply the law of one of the several states, it is "bound to decide the case the way it appears the state's highest court would." *Risley v. Nissan Motor Corp. USA*, 254 F.3d 1296, 1299 (11th Cir. 2001).

Alabama allows service of process on an out-of-state party under any circumstance not inconsistent with the Due Process Clause.  *See* Ala. R. Civ. P. 4.2(b).  This is the familiar form of a long-arm statute.  At least thirty-two of the fifty states have extended their long-arm statutes to the limits of the Due Process Clause.

16

*See* Douglas D. McFarland, *Dictum Run Wild: How Long-Arm Statutes Extended to the Limits of Due Process*, 84 B.U. L. Rev. 491, 496–97, 525–29 (2004) (identifying twenty states that have done so by statutory text and an additional twelve that have done so by statutory interpretation).   However, Plaintiff does not argue that this section applies to this case. [2]   Instead, Plaintiff argues that another statute, Ala. Code § 10A-1-7.32, requires all registered foreign corporations to submit to the general jurisdiction of the courts of Alabama as a condition of registration.   Plaintiff argues that all registered foreign corporations have essentially consented to be treated the same as domestic, Alabama corporations—which are obviously amenable to suit in Alabama because they are "at home" in Alabama.

Plaintiff relies on *Ex parte Nissei Sangyo Am., Ltd.*, 577 So. 2d 912, 914 (Ala. 1991), in support of her argument.   In *Ex parte Nissei Sangyo*, the Alabama Supreme Court said that:

> [The foreign company] has submitted itself to the jurisdiction of the courts of this state.  The basis of the trial court's jurisdiction of [the foreign company] comes from its being qualified under § 10–2A–226, Ala. Code 1975, to do business in Alabama.  It has, by its qualification, submitted itself to the jurisdiction of the trial court.  One of the purposes of the qualification statute is to compel foreign corporations to submit themselves to the jurisdiction of the courts of this state.  *See Jones v. Martin*, 15 Ala.App. 675, 74 So. 761 (1917).   Once a foreign corporation designates a place of business and an agent residing at that

---

[2] Of course, an argument based on Rule 4.2(b) of the Alabama Rules of Civil Procedure would likely be misplaced.  Rule 4.2(b) only applies to out-of-state service, and Plaintiff is instead arguing that her in-state service was equivalent to serving a domestic corporation.  *See* Ala. R. Civ. P. 4.2(b).  The statutory and constitutional questions therefore do not perfectly overlap.

place, the corporation is deemed to have submitted to the jurisdiction of the state courts. *Jefferson Island Salt Co. v. E.J. Longyear Co.*, 210 Ala. 352, 98 So. 119 (1923).

577 So. 2d at 914.[3]

Although it has never been explicitly overruled, it is clear that *Ex parte Nissei Sangyo* is no longer good law. First, the statute that *Ex parte Nissei Sangyo* relied upon has been amended since the case was decided in 1991. In 1991, section 10-2A-227 of the Code of Alabama said:

> A foreign corporation which shall have received a certificate of authority under this chapter shall . . . enjoy the same, but no greater, rights are privileges as a domestic corporation . . . and . . . shall be subject to the same duties, restrictions, penalties and liabilities now or hereafter imposed upon a domestic corporation of like character.

Ala. Code § 10-2A-227 (1991).

Language very similar to this could be found in section 10-2B-15.05 from 1994 to 2009. *See* Ala. Code § 10-2B-10.05 (1994). In 2009, the Alabama legislature reorganized this section, dividing the section into two parts. The first, section 10A-1-7.32, said: "A foreign nonfiling entity or a foreign filing entity registered under this article enjoys the same but no greater rights and privileges as the domestic entity to which it most closely corresponds." Ala. Code § 10A-1-7.32 (2009). The following section, section 10A-1-7.22, said:

---

[3] The fact that the Alabama Supreme Court relied solely on two cases decided before *International Shoe* is concerning, but it is obviously not reason to disregard the court's interpretation of Alabama law.

> Subject to this title and other laws of this state in any matter that affects the transaction of intrastate business in this state, a foreign entity and each member, owner, or managerial official of the entity is subject to the same duties, restrictions, penalties, and liabilities imposed on a domestic entity to which it most closely corresponds or on a member, owner, or managerial official of that domestic entity.

Ala. Code § 10A-1-7.33 (2009).

In 2018, section 10A-1-7.32 was slightly modified:  "A foreign entity with a registration under this article enjoys the same but no greater rights and privileges as the domestic entity to which it most closely corresponds."  Ala. Code § 10A-1-7.32 (2018).  More importantly, the following section, listing the "duties, restrictions, penalties, and liabilities" of a foreign corporation, was repealed in 2018.  Ala. Code § 10A-1-7.33 (2018).

"When analyzing statutory history, we presume that a change in the language of a statute . . . connotes a change in meaning."  *Bourdon v. U.S. Dep't of Homeland Sec.*, 940 F.3d 537, 544 (11th Cir. 2019) (quotation marks omitted); *see also* Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts § 40, at 256 (2012).  And while *Ex parte Nissei Sangyo* may have bound this court if it were interpreting the 1991 version of the statute, the question is whether the Alabama Supreme Court would give a similar interpretation to the *current* version of the statute.  The repeal of the "duties, restrictions, penalties, and liabilities" language implies that foreign corporations are *not* intended to be subject to the same duties, restrictions, penalties, and liabilities as domestic Alabama corporations.  The duty

of consenting to the general jurisdiction of the courts of the state of Alabama may be one such duty that is no longer encompassed by the statute.

But in rulings before and after the repeal, the Alabama Supreme Court has already made clear that it no longer believes in Plaintiff's consent theory.  First, a plurality of the Alabama Supreme Court in *Hinrichs v. General Motors of Canada, Ltd.*, 222 So. 3d 1114, 1159 (Ala. 2016), said that merely maintaining a nationwide market is not enough to subject oneself to the general jurisdiction of Alabama. Second, in *Facebook, Inc. v. K.G.S.*, the Alabama Supreme Court rejected an argument even closer to Plaintiff's.  The plaintiff in that case argued that the foreign corporation was "subject to general jurisdiction in Alabama because it is registered to do business in Alabama."  294 So. 3d 122, 134 (Ala. 2019), *reh'g denied* (Aug. 23, 2019), *cert. denied*, 140 S. Ct. 2739 (2020).  That argument was rejected by a majority of the Alabama Supreme Court.  *Id.*  Six of the justices joined the opinion; one justice concurred in the result without a separate opinion; and the remaining two justices recused themselves.  *Id.* at 147.

While neither *Hinrichs* nor *Facebook* explicitly used the word "consent" or explicitly overruled *Ex parte Nissei Sangyo*, it is clear that the Alabama Supreme Court no longer believes in Plaintiff's consent theory.  And for good reason:  Waiver of a constitutional right should not be treated lightly, and a statute that broadly states

20

that a foreign corporation "enjoys the same but no greater rights and privileges"[4] as a domestic corporation is not a clear indication to a foreign corporation "that its compliance [with the registration requirement] would be construed as consent to answer in [Alabama]'s courts for any purpose." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1320 (11th Cir. 2018).

Alabama Code section 10A-1-7.32 does not clearly indicate that foreign corporations are required to submit to the general jurisdiction of the courts of Alabama as a condition of registration.  The Alabama Supreme Court recently rejected the argument that registration equates to such consent.  *See Facebook*, 294 So. 3d at 134.  The court therefore must conclude that Alabama law does not permit the exercise of general jurisdiction that Plaintiff seeks in this case.

**2.     Even if Plaintiff's consent theory is authorized under Alabama law, it does not comply with Due Process requirements.**

In the ancient days of our republic, a state could not exercise jurisdiction outside of its territorial boundaries.  State jurisdictional statutes therefore had to look to some in-state activity to latch personal jurisdiction onto.  This approach was typified in the Supreme Court's 1877 decision in *Pennoyer v. Neff*, where the Court

---

[4] In a sense, a foreign corporation like Ford can never "enjoy[] the same but no greater rights and privileges" as Alabama corporations.  Alabama corporations can often evade federal *subject matter* jurisdiction for claims by Alabama residents brought under Alabama law.  *See* 28 U.S.C. § 1332.  Ford cannot.  No matter if Ford's registration is considered consent to personal jurisdiction, subject matter jurisdiction cannot be conferred by waiver or consent.  *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

held that the improper attachment of in-state property resulted in a lack of jurisdiction.  *See Pennoyer v. Neff*, 95 U.S. 714, 722 (1877) ("[N]o tribunal established by [a state] can extend its process beyond that territory so as to subject either persons or property to its decisions.").  Some state laws even said that a person's driving an automobile on the state's highways constituted the appointment of "a designated state official as his agent to accept process," therefore permitting the exercise of personal jurisdiction even after the person had left the state.  *Shaffer v. Heitner*, 433 U.S. 186, 202 (1977).  Similarly, registration of a corporation in the forum state was one such way to attach personal jurisdiction.  *See Pennsylvania Fire*, 243 U.S. at 95.

That framework was abandoned in *International Shoe*.  *See* 326 U.S. at 316; *see also Shaffer*, 433 U.S. at 202.  Replacing that framework was the system of "minimum contacts" and "notions of fair play and substantial justice" explained above.  Although the Supreme Court has never identified and specifically overruled every old case that used the *Pennoyer* framework, *International Shoe* and *Shaffer* make clear that the entire framework is no longer valid.  *See Shaffer*, 433 U.S. at 212 n.39 ("To the extent that prior decisions are inconsistent with this standard [set in *International Shoe*], they are overruled.").  *Shaffer* specifically held that some in-state activity that qualified as a basis for personal jurisdiction under the old *Pennoyer* framework will not qualify under the new *International Shoe* framework.  *See id.* at

216–17 (holding that the exercise of *quasi in rem* jurisdiction is not constitutional unless the *International Shoe* test is satisfied).

It is for that reason that a majority of federal courts to consider the issue have rejected *Pennsylvania Fire* or at least cast significant doubt on its continued viability. *See, e.g.*, *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 136 (4th Cir. 2020) ("Given the number of states that subject foreign corporations to domestication requirements, foreign corporations would likely be subject to general jurisdiction in every state where they operate—a result directly at odds with the views expressed by the Court in *Daimler*."); *Waite*, 901 F.3d at 1318 ("After *Daimler*, there is 'little room' to argue that compliance with a state's 'bureaucratic measures' render a corporation at home in a state."); *AM Tr. v. UBS AG*, 681 F. App'x 587, 588 (9th Cir. 2017) (citation omitted) ("[The plaintiff] advocates a rule that would subject a large bank to general personal jurisdiction in any state in which the bank maintains a branch. However, *Daimler* explained that '[a] corporation that operates in many places can scarcely be deemed at home in all of them.'"); *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 640 (2d Cir. 2016) ("If mere registration and the accompanying appointment of an in-state agent—without an express consent to general jurisdiction—nonetheless sufficed to confer general jurisdiction by implicit consent, every corporation would be subject to general jurisdiction in every state in which it

23

registered, and *Daimler*'s ruling would be robbed of meaning by a back-door thief.").

Even beyond the inconsistency with *International Shoe*, *Shaffer*, and *Daimler*, the Supreme Court has made clear in other areas that a state cannot require waiver of a constitutional right as a prerequisite to doing business.  *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013) (explaining the unconstitutional conditions doctrine); *Wheeling Steel Corp. v. Glander*, 337 U.S. 562, 571 (1949) ("The State may arbitrarily exclude [foreign corporations] or may license them upon any terms it sees fit, apart from exacting surrender of rights derived from the Constitution of the United States.").  This doctrine of unconstitutional conditions extends to rights secured by the Due Process Clause, including the right to be haled into only those jurisdictions with which one has minimum contacts.

*Pennsylvania Fire* was overruled by *International Shoe* and *Shaffer*, along with the entire system of territorial thinking represented by *Pennoyer*.  Today, it is clear that registration alone is not a valid method of establishing minimum contacts and that a state cannot require consent to the general jurisdiction of the state as a prerequisite to registration.  Thus, even if consent could be implied under Alabama law, that consent would not provide a basis for the constitutional exercise of personal jurisdiction in this case.

## V.  CONCLUSION

For the reasons stated above, it is ORDERED:

1.     Ford Motor Company's Motion to Dismiss (Doc. # 12) is GRANTED;

2.     Plaintiff's claims against Ford Motor Company are DISMISSED without prejudice for lack of personal jurisdiction; and

3.     The Clerk of the Court is DIRECTED to terminate Ford Motor Company from the docket sheet and to change the caption accordingly.

A final judgment will be entered separately.  This case will remain open as Plaintiff's claims against Defendant Lane are still pending.

DONE this 17th day of November, 2021.

_____/s/ W. Keith Watkins_____
UNITED STATES DISTRICT JUDGE